UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Terese M Harris,<br><br>  Plaintiff,<br><br>  v.<br><br>Commissioner of Social Security,<br><br>  Defendants. | No. 1:25-cv-00287-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>(ECF No. 17, 21, 22) |

### I. Introduction

On March 6, 2025, Plaintiff Terese M. Harris filed a complaint in the Court seeking judicial review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance Benefits pursuant to Title II of the Social Security Act.

### II. Procedural Background

On May 31, 2022, Plaintiff applied for Social Security Disability Insurance Benefits alleging a disability onset date of November 30, 2019, due to hypertension and psoriatic arthritis. AR 66–67; 217–18. These claims were denied initially on September 29, 2022, and on reconsideration on March 1, 2023. AR 106–10, 167–71. On January 23, 2024, the ALJ held a hearing. AR 35–64.

On May 22, 2024, the ALJ issued an unfavorable decision denying Plaintiff's disability

claim. AR 14–34. On January 21, 2025, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision of the Commissioner. AR 1–6. Plaintiff now seeks judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific

job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 30, 2019. AR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: Rheumatoid Arthritis, Psoriatic Arthritis, Obesity and Right Ring Finger PIP Dislocation. AR 20. The ALJ also found at step two that Plaintiff had the following impairments which were determined to be non-severe as they caused no more than minimal restriction in the claimant's ability to perform basic work activities: hypertension, left ventricular hypertrophy, HPV with vulvar and cervical lesions that required removal, Amphetamine Abuse Disorder, Major Depressive Disorder and Generalized Anxiety Disorder. AR 20–22. Id.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 40.1567(b) with the following limitations: she could frequently reach in all directions, could handle and finger with her right upper extremity (non-dominant), and should avoid work in extremely cold environments. AR 22–27.

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a Dental Assistant and Dental Assistant Teacher. AR 27–28. Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged disability onset date of November 30, 2019, through the date last insured of March 31, 2023. AR 28.

## V.  Summary of Vocational, Medical, Opinion and Testimonial Evidence

At the initial level, medical consultant Dr. Vu reviewed Plaintiff's records and opined that Plaintiff could perform light work and could finger and handle with her right hand frequently (2/3 of an 8-hour day, SSR 83-10). AR 77.

On reconsideration, medical consultant Dr. Rudito reviewed Plaintiff's records and similarly opined that Plaintiff could perform light work but could only perform handling and fingering <u>occasionally</u> (1/3 of an 8-hour day, SSR 83-10) due to her psoriasis. AR 93.

At the hearing on January 23, 2024, Plaintiff testified that she last worked as a dental assistant in November 2019; that she was laid off when the practice closed but she struggled to perform her job duties before then (AR 44); that ankle pain prevents her from working, which is worsened by standing (AR 46); that psoriasis can cause her hands to become raw and bleed, and cause ingrown fingernails; (AR 46);  that she eats anti-inflammatory foods and uses moisturizers and gloves when she is symptomatic (AR 47); that her legs and shoulders ache (AR 47);  that symptoms in her hands make it difficult to hold the tools she needed to (AR 51); that she has constant pain in multiple joints (AR 53); that she injured her right hand in a fall (AR 53); that dishes and other tasks are difficult due to hand rawness (AR 56); that she needs help to grocery shop and struggles to button shirts or tie shoes ( AR 56);  that she can stand and sit up to one hour (AR 57); that flares can last for up to two weeks, though she still has pain between flares (AR 57–58); and, she participates in Alcoholics Anonymous for amphetamine usage in remission for 5 years (AR

55).

The VE testified that a limitation to occasional reaching, handling and fingering would preclude past work and that she had no transferable skills to light or sedentary work because her past work was too specialized. AR 62.

**VI.    Issues Presented**

Plaintiff asserts two claims of error: 1- "The ALJ's evaluation of the prior administrative medical findings does not comply with regulatory requirements and is not supported by substantial evidence." 2- "The ALJ failed to adequately evaluate Plaintiff's subjective reports of symptoms in accordance with 20 C.F.R. §404.1529, Ninth Circuit precedent, and the substantial evidence standard". MSJ at 2.

    **A.    Medical Opinions**

        **1.    Applicable Law**

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

5

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

## 2. Analysis

Plaintiff disputes the ALJ's reliance on the opinion of Dr. Vu who, at the initial level of review, opined that Plaintiff could perform frequent manipulative activities with her right (non-dominant) hand, consistent with the ALJ's ultimate RFC. MSJ at 9.

In accepting Dr. Vu's opinion, the ALJ explained as follows:

> [T]his opinion [is] persuasive as it is supported by a review of the medical records and includes adequate supportability. It is consistent with the record which demonstrates the claimant ambulates with a steady gait with even and unlabored respirations. The claimant also has a history of psoriasis and psoriatic arthritis with a right ring finger pip dislocation that failed conservative treatment, and resulted in ongoing limitations in the frequency the claimant can use their right upper extremity to handle and finger. However, to account for the claimant's reported symptomology and psoriatic arthritis on her right elbow, the undersigned has additionally provided for frequently reaching with the right upper extremity.

AR 26.

Plaintiff takes issue with the ALJ's observation that "the claimant ambulates with a steady gait with even and unlabored respirations." Plaintiff contends that the ALJ's acceptance of Dr.

Vu's opinion on that basis "is illogical as Plaintiff's gait and respiratory ability are unrelated to her upper extremity limitations." MSJ at 10. This argument however is not persuasive as it is not explained how these issues, such as steady gait, are not appropriate observations for the ALJ to make in finding Dr. Vu's opinion persuasive. Indeed, the ALJ elsewhere observed as follows:

> The claimant is alleging disability due to hypertension and psoriatic arthritis in her hands <u>and feet</u>. (Ex. 2E/2). Secondary to her psoriatic arthritis, the claimant endorses intermittent joint pain that occur outside of her psoriatic flare ups and is localized in her shoulders, back, <u>hip, knees, legs, and ankles</u>. (Ex. 4F/31; 18F/85; 21F/3, 8, 13).

AR 23 (emphasis added).

Thus, the ALJ was appropriately addressing Plaintiff's psoriatic arthritis symptoms in her upper <u>and</u> lower extremities which Plaintiff put in issue in her application. And this is so despite that Plaintiff's claim of error only relates to her upper extremities.

As to Plaintiff's upper extremities, the ALJ did find that certain restrictions were warranted to account for Plaintiff's upper extremity symptoms as follows: "to account for the claimant's reported symptomology and psoriatic arthritis on her right elbow, the undersigned has additionally provided for <u>frequently</u> reaching with the right upper extremity." AR 26 (emphasis added).

Plaintiff also disputes the ALJ's rejection of the second consultant's contrary opinion rendered by Dr. Rudito who opined Plaintiff was limited to occasional manipulative activities with her right (non-dominant) hand, including reaching, handling, and fingering. AR 93. In rejecting Dr. Rudito's opinion, the ALJ explained:

> [T]he undersigned finds the opinion not persuasive. Although the opinion is supported by a review of the available medical records; it is inconsistent with minimal objective findings or treatment for the claimant's right upper extremity outside of her right ring finger, and is also inconsistent with claimant's high activities of daily living; including living alone and independence with meal prep. Furthermore, recent treatments evidence demonstrates improvement with respect to her arthritis, which the opinion did not have the benefit of reviewing.

Plaintiff asserts that this reasoning by the ALJ is not consistent with the ALJ's own description of the objective findings and treatment regimen. The ALJ reasoned as follows:

7

> Collateral information denotes the claimant was diagnosed with Rheumatoid Arthritis in 2017 while with Kaiser and was initially treated with Arava. She transferred to Dr. Yasmeen Khalid who first saw her in June 2018, in which due to the claimant's reports of significant synovitis and fatigue, eh added Plaquenil. After which, the claimant reported feeling better however was non-compliant with follow-up. Then in October 2020, the claimant reported three + months of rash on her hands and feet, with marked itchiness impacting her sleep, which was later confirmed to be psoriatic arthritis. The claimant started Enbrel injections, with good response, however her dermatologist changed her treatment to Tremfya, after which she was put back on Embrel, which she currently receives weekly.

Granted, to Plaintiff's point, it is perhaps a bit unclear what additional treatment besides medication and injections that the ALJ would have expected to see to corroborate debilitating psoriatic arthritis symptoms. Nevertheless, Plaintiff does not dispute the ALJ's observations that Plaintiff reported feeling better with Plaquenil and had a good response to Enbrel injunctions, which undermines Dr. Rudito's opinion that Plaintiff's arthritis was sufficiently debilitating to preclude her from performing manipulative activities more than occasionally (1/3 of an 8-hour day), such as reaching, handling and fingering.

Further, as quoted above, the ALJ explained that more recent treatment notes following Dr. Rudito's opinion demonstrated improvement with respect to Plaintiff's arthritis, evidence which Dr. Rudito did not have the benefit of reviewing.

Indeed, the ALJ elsewhere cited such evidence, including reports made by Plaintiff to her providers of mild joint pain which was well controlled, and that she could care for herself with no difficulty. (Ex. 4F/35, 40; 19F/57; 21F/19). The ALJ explained "Specifically, at her appointment in June 2023, the claimant reported her psoriasis had nearly resolved. (Ex. 21F/8, 13)." AR 25. Of importance, this evidence post-dated Dr. Rudito's review on reconsideration dated December 22, 2022 (AR 92–94). Thus, even if Dr. Rudito's opinion was not wholly inconsistent with then-existing evidence, it was significantly undermined by later dated treatment notes. Had Plaintiff wished to advocate for a closed period of disability for only a portion of the relevant period, that needed to be set forth in Plaintiff's brief.

8

Plaintiff further contends that Dr. Rudito's opinion was consistent with Plaintiff's "traumatic dislocation of her right ring finger in December 2021, which obviously only compounded the problems with her hands." MSJ at 11 (citing AR 24). However, as the ALJ noted, Plaintiff underwent surgery for the right ring finger on October 31, 2022 (PIP joint fusion), and that post-surgical x-rays showed appropriately positioned hardware and stable alignment. AR 24 (citing AR 909).

Finally, Plaintiff reported doing well overall at a November 2022 follow-up, and her hand was out of the splint. (Ex. 12F/6). At her May 2023 follow-up she could flex her MP and DIP of her right ring finger and had no pain with range of motion (Ex. 18F/39) despite ongoing chronic difficulty fully extending her right ring finger (Ex.11F/17, 24; 12F/7, 14, 21). Again, Dr. Rudito's December 2022 opinion, which was one year after the injury and just after the surgery, would not have fully accounted for the post-surgical healing and dexterity of Plaintiff's ring finger, particularly the progress notes in 2023. Again, if Plaintiff was inclined to advocate for a closed period of disability for only a portion of the relevant period, that needed to be set forth in her brief.

In sum, substantial evidence supports the ALJ's RFC for frequent manipulations with the right (non-dominant) upper extremity as opined by Dr. Vu, and the rejection of the contrary opinion rendered by Dr. Rudito who would have limited Plaintiff to only occasional manipulative activities.

    **B.**    **Subjective Complaints**

        **1.**    **Applicable Law**

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the

intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom; and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. Analysis

After setting forth the applicable law, Plaintiff's analysis spans just over one page. Plaintiff raises three points: 1- "The ALJ's only basis for rejecting Plaintiff's claims of limited ability to use her hands appears to be her continued ability to live independently, care for her father, and dress herself;" 2- "these are not the types of activities that contradict Plaintiff's testimony that she is unable to assist in long surgeries while manipulating small dental tools"; and 3- the ALJ's summary of Plaintiff's activities was misleading.

First, Plaintiff's ADLs are not the only reason for rejecting Plaintiff's claims concerning her hand limitations. As discussed above: 1- Plaintiff had a good response to medication such as Enbrel injections; 2-her psoriatic arthritis was described in June 2023 as nearly resolved; and 3- she had a successful fusion surgery of the ring finger on her right (non-dominant hand). Here, no inferential leaps are required to apply the ALJ's reasoning as addressed above with equal force to Plaintiff's subjective complaint testimony. This is so even if the ALJ did not repeat the same reasoning at each juncture of the RFC analysis. See Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th

Cir. 2022) (explaining the courts are to look at "*all* pages" of the ALJ's decision); Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (explaining that as reviewing courts, we are not "deprived of our faculties" for drawing inferences from an ALJ's decision).

Second, Plaintiff's ADLs as described by the ALJ included independent self-care such as dressing, grooming, meal preparation, and caring for her father. AR 25. Although this is not an exceptional degree of functionality, is it trivial. Further, these are relevant factual observations in support of the light exertional RFC even if the cited activities are not directly transferable to Plaintiff's former job duties such as manipulating dental instruments during procedures. See Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.")

Finally, Plaintiff contends the ALJ's description of her ADLs was misleading given that Plaintiff testified: 1-"sometimes it's very difficult to do dishes."; 2- although she can shop, she needs help unloading groceries; 3- she can dress herself, but struggles to do so and takes "a little longer" when she has symptom flare ups; 4- that "maybe [she will] sleep in a little bit."; 5- when she does not have a psoriatic flare, she can lift up to ten pounds but if her hands are raw, she cannot "pick up those potatoes or that stuff because it's too sore"; and, 6- that if she bumps the tips of her fingers during a flare, she would "want to scream" in pain. AR 56–57.

In regard to Plaintiff's testimony that if she bumps the tips of her fingers during a flare she would want to scream in pain, this testimony is inconsistent with the evidence discussed above documenting well controlled symptoms with Enbrel injections and with Plaintiff's own acknowledgment that she performs various activities. Further, there is no indication how often flare ups of that severity occurred.

As for Plaintiff's other contentions, such as taking "a little longer" to dress herself during flare ups, these limitations would not significantly undermine her ability to perform a light exertional RFC. Importantly, the RFC is not the most one can do while remaining symptom free,

11

rather the RFC represents "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

### VII. Recommendation

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 17) be **DENIED.**
2. That Defendant's cross-motion (Doc. 21) be **GRANTED.**
3. That the decision of the Commissioner of Social Security be **AFFIRMED**.
4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

### VIII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case. Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 6, 2025**                    **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE